PRESENT: Goodwyn, Mims, McClanahan, Powell, Kelsey, and McCullough, JJ., and Lacy, S.J.

BRIAN WENDALL JORDAN

v.  Record No. 161527

COMMONWEALTH OF VIRGINIA

OPINION BY
JUSTICE STEPHEN R. McCULLOUGH
February 22, 2018

FROM THE CIRCUIT COURT OF GRAYSON COUNTY
H. Lee Harrell, Judge

Brian Wendall Jordan, an inmate, filed a petition to change his name. The trial court denied his petition, and Jordan asks us to reverse this decision. For the reasons stated below, we affirm the trial court's decision.

## BACKGROUND

Brian Wendall Jordan was sentenced to a lengthy term of incarceration after he was convicted of several serious offenses: malicious wounding, robbery, first degree murder, aggravated malicious wounding, and burglary. A stipulation of facts indicates that, in one instance, he forced his way into the home of an elderly woman, choked her, and severely beat her while demanding her money. He also broke into the home of an elderly couple and badly beat them, again to obtain money. One of his victims died from the heavy blows Jordan inflicted upon him.

After undergoing a religious conversion, he filed a petition in the circuit court to change his name to Abdul-Wakeel Mutawakkil Jordan. He added, however, that "he would not be hindered from the free exercise of his religion if not allowed to change his name." The court found good cause to accept the petition, Code § 8.01-217(D), and ordered the Commonwealth to respond. The Commonwealth's Attorneys for both Grayson County and the City of Chesapeake

opposed the petition.* The Commonwealth's Attorney for the City of Chesapeake opposed the

petition without elaboration. The Commonwealth's Attorney for Grayson County argued that

granting the name change was likely for a fraudulent purpose, would frustrate a legitimate

law-enforcement purpose, and would infringe on the rights of others.

At a hearing conducted by using a live two-way video connection, the petitioner testified

and offered written exhibits. Following the hearing, the court found the name change was not

sought for a fraudulent purpose, but observed that "[t]he prism through which the court views the

request of Mr. Jordan is necessarily different because of his extraordinarily heinous convictions."

The court reasoned as follows.

> The punishment of crime is an elementary purpose of law-enforcement. There are four commonly accepted goals of criminal punishment: retribution, deterrence, rehabilitation and incapacitation. Changing the name of Mr. Jordan frustrates retribution, deterrence and incapacitation. He was convicted of these heinous crimes under the name Brian Wend[a]ll Jordan and his sentence, as rendered by the Circuit Court of the City of Norfolk, should be served and concluded under that name. Included in this consideration are the victims of his crime, who have the right and the security in the knowledge that he is serving his apportioned sentence under that name. Someone so dangerous should have his identity fixed, certain and intractable not only with the Department of Corrections but with all of society. There should never be even a hint of confusion as to who this person is. Mr. Jordan pointed out in his materials and argument that the Department is equipped to handle name changes. That the Department can handle an inmate's name change does not of itself satisfy [Code] § 8.01-217(D). A function of his punishment is that he bear the convictions in the name they were ordered by the court, and that his victims and society have that assurance.

---

* The Commonwealth's Attorney for the City of Chesapeake submitted a response on behalf of the City of Norfolk because the Norfolk Commonwealth's Attorney was recused during the initial prosecution.

The court found that the petitioner's application "frustrates a legitimate law-enforcement purpose" and thus the provisions of Code § 8.01-217(D) were not satisfied.

Jordan filed this pro se appeal and we granted it. In accord with the highest traditions of our profession, counsel volunteered to represent him on a pro bono basis.

ANALYSIS

We review a circuit court's denial of an application for a name change under an abuse of discretion standard. *In re Brown*, 289 Va. 343, 347, 770 S.E.2d 494, 496 (2015). The statute treats probationers, persons required to register on the sex offender registry, and inmates differently from other petitioners. For probationers, persons required to register on the sex offender registry, and inmates,

> [t]he court . . . *may* order a change of name if, after receiving and considering evidence concerning the circumstances regarding the requested change of name, the court determines that the change of name (i) would not frustrate a legitimate law-enforcement purpose, (ii) is not sought for a fraudulent purpose, and (iii) would not otherwise infringe upon the rights of others. Such order shall contain written findings stating the court's basis for granting the order.

Code § 8.01-217(D) (emphasis added). For all other applicants,

> the court, *shall*, unless the evidence shows that the change of name is sought for a fraudulent purpose or would otherwise infringe upon the rights of others or, in a case involving a minor, that the change of name is not in the best interest of the minor, order a change of name.

Code § 8.01-217(C) (emphasis added).

Under subsection (C) of this statute, the court "shall" order a name change unless certain circumstances are present. Code § 8.01-217(C). For inmates, probationers, and persons required to register as sex offenders, the statutory language affords far more discretion to the trial court. Code § 8.01-217(D). It provides that a court "may" grant the petition. *Id.* "[W]e must assume

3

that the General Assembly chose, with care, the words it used in enacting the statute, and we are bound by those words when we apply the statute." *Halifax Corp. v. First Union Nat'l Bank*, 262 Va. 91, 100, 546 S.E.2d 696, 702 (2001). When the General Assembly employs a specific word in one section of a statute, and chooses a different term in another section of the statute, we must presume the difference in language was intentional. *See, e.g.*, *RGR, LLC v. Settle*, 288 Va. 260, 295-96, 764 S.E.2d 8, 29 (2014) ("When the General Assembly uses two different terms in the same act, those terms are presumed to have distinct and different meanings.") (quoting *Industrial Dev. Auth. of the City of Roanoke v. Board of Supervisors*, 263 Va. 349, 353, 559 S.E.2d 621, 623 (2002)). *See also Brown v. Commonwealth*, 284 Va. 538, 545, 733 S.E.2d 638, 641 (2012) ("When the General Assembly includes specific language in one statute, but omits that language from another statute, courts must presume that the exclusion of the language was intentional because under these circumstances, it is evident that the General Assembly knows how to include such language in a statute to achieve an intended objective; thus the omission of such language in another statute represents an unambiguous manifestation of a contrary intention.") (alterations and internal quotation marks omitted) (quoting *Halifax Corp. v. Wachovia Bank*, 268 Va. 641, 654, 604 S.E.2d 403, 408 (2004)).

For inmates, probationers, and persons required to register as sex offenders, a court must find as a threshold matter that the name change would not frustrate a legitimate law-enforcement purpose, is not sought for a fraudulent purpose, and would not otherwise infringe on the rights of others. Code § 8.01-217(D). If any one of those circumstances is present, the court must deny the petition. That, however, is only the beginning of the inquiry. Even when those circumstances are absent, the court is not required to grant the petition - it retains broad discretion to grant or to deny the petition.

The parties understandably focus our attention on the question of whether the petition was properly denied on the basis that it would frustrate a legitimate law-enforcement purpose. The petitioner offers a narrow definition and contends that his name change would not frustrate a law-enforcement purpose. For its part, the Commonwealth tenders a broader definition and submits that the petitioner's name change was properly denied under such a definition.

We need not define the term "legitimate law-enforcement purpose" under Code § 8.01-217(D) to resolve this case. Although the trial court cited this provision in its ruling, its reasoning is broader than the confines of that provision. We cannot say that the basis articulated by the trial court for denying the petition falls outside the scope of its broad discretion. The court could conclude that a person who would commit crimes of that gravity and brutality must retain his given name, for the peace of mind of the victims and the victims' families and to avoid any possible future confusion about his identity. Although the petitioner faces a lengthy term of incarceration, and therefore will not soon return to the communities where he perpetrated his crimes, he is eligible for possible release upon reaching the age of sixty-five. *See* Code § 53.1-40.01. We, therefore, find no abuse of discretion under these circumstances.

We also note, as we observed at the outset of this opinion, that the petitioner expressly stated that "he would not be hindered from the free exercise of his religion if not allowed to change his name." This circumstance also contributes to our conclusion that the trial court committed no abuse of discretion.

CONCLUSION

We will affirm the judgment of the trial court.

*Affirmed.*

5