COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Decker, Judges Huff and Callins
Argued at Richmond, Virginia

PUBLISHED

CALVIN WAYNE THOMAS

v.      Record No. 0477-22-2

COMMONWEALTH OF VIRGINIA

OPINION BY
CHIEF JUDGE MARLA GRAFF DECKER
MAY 9, 2023

FROM THE CIRCUIT COURT OF HENRICO COUNTY
L. A. Harris, Jr., Judge

Paul C. Galanides (Owen I. Conway; Owen I. Conway, PLLC, on
brief), for appellant.

Susan Hallie Hovey-Murray, Assistant Attorney General (Jason S.
Miyares, Attorney General, on brief), for appellee.

Calvin Wayne Thomas appeals the trial court's imposition of a term of active

incarceration following the revocation of his probation and suspended sentence for aggravated

sexual battery in violation of Code § 18.2-67.3. He contends the trial court erred by concluding

that his uses of alcohol and marijuana were not first technical violations of his probation under

Code § 19.2-306.1. The appellant suggests, as a result, that the court lacked authority to impose

any suspended time. We hold that the trial court did not err by classifying his alcohol violation

as non-technical and ordering the appellant to serve a portion of his previously suspended

sentence. However, we conclude that the marijuana violation did not permit the imposition of

suspended time. Consequently, we affirm in part, reverse in part, and remand the case for the

trial court to consider anew, in light of our ruling, how much active time, if any, to impose for

the probation violation.

BACKGROUND[1]

In 2014, pursuant to a written agreement with the Commonwealth to plead guilty, the appellant was convicted of aggravated sexual battery, carnal knowledge of a minor, and three counts of indecent liberties, in violation of Code §§ 18.2-63, -67.3, -370, and -370.1. Consistent with the plea agreement, he was sentenced to a total of fifty years of incarceration with forty-one years and eight months suspended. The court's order conditioned the suspended sentence, in relevant part, on the appellant's good behavior and compliance with supervised probation.

In December 2021, the appellant completed his term of active incarceration and began supervised probation. As part of the probationary process, he met with his probation officer and signed a document listing the conditions of his probation. One condition was that he would "follow the Probation and Parole Officer's Instructions" and "be truthful, cooperative, and report as instructed." He further signed a document titled "Sex Offender Special Instructions." One of the instructions provided that he would not "purchase, consume, or possess alcohol, marijuana, and/or illegal substances," with the exception of "controlled" medication prescribed by a physician. At the direction of his probation officer, the appellant then entered a community residential program, for which he signed yet another document noting rules that also clearly stated he could not use alcohol or marijuana.

Later that month, the appellant tested positive for marijuana use on three different occasions. On the last occasion, he also tested positive for alcohol. Due to his drug and alcohol use and "poor attitude," he was terminated from the community residential program.

The appellant's probation officer prepared a major violation report based on this behavior, and the court issued a show cause order. The report named the appellant's discharge

---

[1] On appeal of the revocation of a suspended sentence, we review the evidence in the light most favorable to the Commonwealth, as the party who prevailed below. *Jenkins v. Commonwealth*, 71 Va. App. 334, 339 n.2 (2019).

from the community residential program as a violation of his duty to follow his probation officer's instructions, one of his "standard" conditions of probation. It further listed his positive tests for alcohol and marijuana as violations of his "special" instructions. The probation officer also indicated that when the appellant committed his original offenses, he provided his primary victim with alcohol and marijuana and used those substances with her. The probation officer concluded that, as a result, the appellant's failure to abide by the substance abuse provisions of his probation presented a public safety concern. The guidelines worksheet completed by the probation officer recommended active incarceration of "[t]ime served" to six months.

At the show cause hearing in February 2022, the major violation report, addendum, and sentencing guidelines were admitted into evidence. The Commonwealth's attorney also detailed the appellant's violations of the substance abuse provisions of his probation. The court found that the appellant had violated a "special condition" of his probation and suspended sentence. The court added that the appellant had to stop using marijuana and alcohol. It revoked the suspended sentence for the aggravated sexual battery conviction and resuspended all but ninety days.[2]

The appellant filed a motion to modify or reconsider his sentence. He did not dispute that he used alcohol and marijuana and tested positive for both substances. Instead, defense counsel argued that the uses of alcohol and marijuana were express technical violations under Code § 19.2-306.1(A). The court reasoned that while the word "special" is "not in the statute," the violations were not merely technical ones because the alcohol and marijuana use was "a

---

[2] The court suspended execution of the ninety-day sentence pending appeal.

dominating factor" in the appellant's offenses and was the reason for the special condition that was "part of his probation." Consequently, the court denied the motion.[3]

ANALYSIS

The appellant contends that the trial court erred by finding that his probation violations for using alcohol and marijuana were not technical violations within the meaning of Code § 19.2-306.1 simply "because [he] was a sex offender" subject to special conditions. As a result, he argues that the court exceeded its authority by imposing a term of active incarceration, not permitted by the statute for a first technical violation.

I. Standard of Review

Whether to revoke a suspended sentence "lies in the discretion of the trial court" and will not be reversed absent an abuse of that discretion. *See Carroll v. Commonwealth*, 280 Va. 641, 654 (2010) (quoting *Hamilton v. Commonwealth*, 217 Va. 325, 326 (1976)). "This bell-shaped curve of reasonability governing our appellate review rests on the venerable belief that the judge closest to the contest is the judge best able to discern where the equities lie." *Minh Duy Du v. Commonwealth*, 292 Va. 555, 564 (2016) (quoting *Sauder v. Ferguson*, 289 Va. 449, 459 (2015)). While the trial court's discretion is "quite broad," *Carroll*, 280 Va. at 654 (quoting *Hamilton*, 217 Va. at 326), it is subject, of course, to any applicable statutory limitations, *see, e.g.*, Code §§ 19.2-306 to -306.1. In evaluating whether an abuse of discretion occurred, the appellate court reviews issues of statutory interpretation de novo. *Green v. Commonwealth*, 75 Va. App. 69, 76 (2022); *see also Robinson v. Commonwealth*, 68 Va. App. 602, 606 (2018)

---

[3] The appellant subsequently filed a timely motion to vacate his sentence, repeating the allegations in his motion to modify. He additionally argued that the denial of his motion was error because the court lacked statutory authority to impose active time for a first technical violation, rendering the imposition order void ab initio. Twenty-three days after entry of the final order, the court entered an order denying the motion to vacate. We do not consider whether the court had authority to enter that order under Rule 1:1 because the appellant had already obtained timely rulings on his relevant claims in the context of his earlier motion to modify.

(recognizing that a court abuses its discretion when it makes an error of law). It views the underlying evidence, by contrast, "in the light most favorable to the Commonwealth, as the prevailing party, including all reasonable . . . inferences that may properly be drawn from it." *Green*, 75 Va. App. at 76 (quoting *Johnson v. Commonwealth*, 296 Va. 266, 274 (2018)).

## II. Legal Framework

The appellant's claim regarding the trial court's authority to impose active jail or prison time requires an examination of the applicable statutory scheme. In conducting such an examination, the court "must assume that the General Assembly chose, with care, the words it used in enacting a statute," and it is "bound by those words" when applying the statute. *Henthorne v. Commonwealth*, 76 Va. App. 60, 66 (2022) (quoting *Jordan v. Commonwealth*, 295 Va. 70, 75 (2018)). As a result, the reviewing court follows a statute's "plain meaning . . . unless the terms are ambiguous or applying the plain language would lead to an absurd result." *Id.* (quoting *Taylor v. Commonwealth*, 298 Va. 336, 341 (2020) (alteration in original)). The court does not "opine on the wisdom of enacted legislation. Instead, '[t]he duty of the court[] is "to construe the law as it is written."'" *Id.* at 68 n.1 (first alteration in original) (quoting *Janvier v. Arminio*, 272 Va. 353, 366 (2006)).

Here, the applicable statutory scheme authorizes a trial court to "revoke the suspension of sentence for any cause [it] deems sufficient that occurred at any time within the probation period, or within the period of suspension fixed by the court." Code § 19.2-306(A). Upon determining that a defendant has violated the terms of his suspended sentence, a trial court may revoke that suspension and "impose a sentence in accordance with the provisions of [Code] § 19.2-306.1." Code § 19.2-306(C); *see* 2021 Va. Acts Spec. Sess. I ch. 538 (enacting Code § 19.2-306.1). Accordingly, we turn to the language of that statute.

- 5 -

Code § 19.2-306.1 "creates two tiers of probation violations: (1) technical violations . . . and (2) non-technical violations." *Heart v. Commonwealth*, 75 Va. App. 453, 466 (2022); *see* Ronald J. Bacigal & Corrina Barrett Lain, *Virginia Practice Series: Criminal Procedure* § 19:9 (2022-2023 ed.). Technical violations are "based on a probationer's failure to do one of ten enumerated actions." *Heart*, 75 Va. App. at 466. Those actions, listed in subsection (A), reflect ten of the eleven specific requirements imposed on all probationers supervised by the Department of Corrections (DOC). *See* Va. Crim. Sent'g Comm'n Ann. Rep. 49 (2021) [hereinafter 2021 Ann. Rep.].[4] As a result, in practice, the violations classified as technical ones often stem from conditions that apply because a DOC probation officer has presented them to the felony probationer to sign as that person begins a new period of supervision. *See id.* at 49, 55.[5]

When a court revokes a suspended sentence based on any of the enumerated "technical" violations, it has limited options regarding the imposition of active incarceration. Code § 19.2-306.1(C); *see Green*, 75 Va. App. at 74-75. The governing statute specifically provides that "upon a first technical violation of a suspended sentence or probation," committed in any of the ways enumerated in subsection (A), "a court 'shall not' impose a sentence of active incarceration." Bacigal & Lain, *supra* (quoting Code § 19.2-306.1(C)). When a case involves "[m]ultiple technical violations" that either "aris[e] from a single course of conduct or . . .

---

[4] The statutory technical violations are "based on" conditions two through eleven of the standard conditions of probation, omitting only condition one (new law violations, which are designated as non-technical under Code § 19.2-306.1(B)). 2021 Ann. Rep., *supra*, at 49. Our recent decisions recognize that Code § 19.2-306.1(A) "categorize[s] *existing* types of probation violations." *Nottingham v. Commonwealth*, 77 Va. App. 60, 68 (2023) (emphasis added); *see Diaz-Urrutia v. Commonwealth*, 77 Va. App. 182, 194 (2023).

[5] Of course, the *sentencing court* has authority to impose specific, reasonable conditions of suspension and probation tailored to each individual and situation. *See Murry v. Commonwealth*, 288 Va. 117, 122 (2014) (citing Code § 19.2-303); *see also Fazili v. Commonwealth*, 71 Va. App. 239, 254-55 (2019) (discussing the differing duties of courts and probation officers with respect to terms and conditions of probation).

incident" or are "considered at the same revocation hearing," those violations "shall not be considered separate [ones] for the purposes of sentencing" under the statute. Code § 19.2-306.1(A). Generally speaking, then, multiple first-time technical violations, if committed together or addressed together by the court, are jointly subject to the condition prohibiting the imposition of active time. *See id.*

These sentencing limits do not apply, however, to what our caselaw refers to as non-technical violations. *See* Code § 19.2-306.1(B)-(C); *Heart*, 75 Va. App. at 466. Non-technical violations include "convict[ion] of a criminal offense that was committed after the date of the suspension" and "violat[ion of] another condition other than (i) a technical violation [in subsection (A)] or (ii) a good conduct violation that did not result in a criminal conviction." Code § 19.2-306.1(B).[6]

Not specifically mentioned in the statutory scheme is another category of violation— violations of conditions or instructions referred to as "special." *See* Code § 19.2-306.1; Va. Crim. Sent'g Comm'n Ann. Rep. 43, 51 (2022) [hereinafter 2022 Ann. Rep.]. For example, special conditions formulated by the DOC are often imposed on a probationer convicted of a particular category of offenses, such as sex or gang-related offenses. *See* 2022 Ann. Rep., *supra*, at 43, 54-56. These categories of conditions are ones that, like the DOC's "standard" conditions

---

[6] The appellant argues only that both violations were technical ones. He does not suggest that they were "good conduct" violations or that such a classification would prevent the trial court from imposing active incarceration. *See generally Diaz-Urrutia*, 77 Va. App. at 194 n.4 (declining, for best-and-narrowest-ground reasons, "to opine on what sanction [the statute] authorizes for a good conduct violation"). In any event, we have held that "so long as there is 'another condition other than' the . . . good conduct condition that has been violated, then the sentencing court is simply not constrained by the statute because the 'basis of [the] violation' is 'another condition,' not a good conduct violation." *Id.* at 191 (second alteration in original). Here, the appellant's charged violation conduct was based on conditions of his probation, not the "good behavior" requirement in the original sentencing order, and we hold *infra* in Part III.A. that one of those violations, which involved alcohol use, was a non-technical one. Therefore, we do not address the "good conduct" portion of the statute further.

of probation for all felony offenders, are acknowledged and agreed to by a probationer in written form when meeting with his probation officer to begin a period of supervision.[7] *See* 2021 Ann. Rep., *supra*, at 49, 55.

It is under this legal framework that we examine the appellant's assignment of error.

### III. The Appellant's Probation Violations

Here, on the heels of a sea change in the applicable law, the trial court was required to decipher a new sentencing scheme and make a ruling. Without any guidance beyond the new additions to the statutory scheme itself, the court ruled that the appellant's alcohol and marijuana use violated a "special" condition of his probation and suspended sentence. It imposed a ninety-day period of active incarceration on that basis but suspended execution of that sentence pending appeal. The appellant argues that his violations of the alcohol and marijuana condition, although imposed upon him through a DOC sex offender special instruction, are nonetheless technical violations listed in Code § 19.2-306.1(A)(vi) and (vii) because the violation behavior was "the same."[8] He suggests as a result that the trial court erred by imposing a term of active incarceration.

We hold first that, at a time when appellate guidance was lacking, the trial court erred by concluding that classification of the relevant conditions of probation as "special" conditions is dispositive. Since the trial court issued that ruling, this Court has clarified that any "*label . . .* [that] may have [been] used" for the condition is not controlling. *Delaune v. Commonwealth*, 76

---

[7] Courts and probation officers also routinely impose other types of "freestanding" special conditions, ones not contained in a comprehensive list for a particular category of offender. *See* 2022 Ann. Rep., *supra*, at 43, 51 (noting that, "[h]istorically," special conditions were any conditions imposed by either the court or a probation officer that were "more specific than the traditional conditions of probation" and discussing various types of conditions imposed).

[8] The appellant does not dispute that he used these substances in violation of his probation.

Va. App. 372, 383 (2023) (emphasis added) (analyzing a "special" condition imposed by the trial court). The Court explained instead that "the General Assembly specifically defined 'technical violation' to include any 'violation *based on*' specified conduct." *Id.* at 382-83. In other words, Code § 19.2-306.1(A) "focuses on the underlying violation conduct itself." *Id.* at 383. "When the violation conduct *matches* the conduct listed" in one of the ten subsections of Code § 19.2-306.1(A), "it is, by definition, a 'technical violation.'" *Id.* (emphasis added). The language, therefore, need not be identical, as long as the probationer's proscribed "underlying" conduct "matches" the listed technical violation in the statute. *See id.* By so holding, the Court rejected the theory that merely classifying something as a special condition, a term not used in Code § 19.2-306.1, insulates it from the limitations on imposing active incarceration that the General Assembly set out in the statute.[9] *See id.* at 382-83; *see also Diaz-Urrutia v. Commonwealth*, 77 Va. App. 182, 191 (2023) (holding that "crafting 'special conditions' that encompass conduct defined by the statute as a 'technical violation'" does not "immunize [a] suspended sentence[] from the reach of Code § 19.2-306.1").

Consequently, we turn to the language of Code § 19.2-306.1(A) to determine whether the appellant's alcohol and drug use "matche[d]" the conduct enumerated in subsections (vi) and (vii) of the statute. *See Delaune*, 76 Va. App. at 383. First, subsection (A)(vi) details a probationer's failure to "refrain from the use of alcoholic beverages to the extent [such use] disrupts or interferes with his employment or orderly conduct." Second, subsection (A)(vii) involves a probationer's failure to "refrain from the use, possession, or distribution of controlled substances or related paraphernalia." On the procedural posture of this case, if either the alcohol

---

[9] These same principles compel us to reject the Commonwealth's suggestion that the "another condition" language in Code § 19.2-306.1(B) is broad enough to encompass the sex offender special instructions and automatically exclude them from the list of technical violations in subsection (A).

or drug use violation was not a technical violation under subsection (A)(vi) or (vii), then the trial court did not err by ordering the appellant to serve active time.[10]

## A. Alcohol Violation

With regard to the appellant's alcohol violation, the sex offender special instructions he signed provided in pertinent part that he could not consume *any alcohol*. Subsection (A)(vi) of Code § 19.2-306.1, by contrast, defines using alcohol as a technical violation *only* "to the extent that it disrupts or interferes with" the probationer's "employment or orderly conduct." Therefore, the appellant's "violation conduct" of consuming alcohol under the sex offender special instructions, without any requirement of associated misbehavior or adverse impact on employment, does not "match[]" the alcohol-related conduct listed as a technical violation. *See Delaune*, 76 Va. App. at 383. As a result, the appellant's violation of his probation based on his alcohol consumption is not a technical violation under subsection (A)(vi), the only subdivision of Code § 19.2-306.1(A) upon which the appellant relies to challenge this portion of the ruling on appeal.

Consequently, the appellant's violation of the alcohol special condition was not a technical one under subsection (A)(vi) of Code § 19.2-306.1, and the trial court was free to order the appellant to serve all or part of his previously suspended sentence.

---

[10] It is undisputed that the appellant's discharge from the community residential program was a technical violation under a third subsection, (A)(v), for failing to "follow the instructions of [his] probation officer" to participate in the program. The trial court did not rely on this violation conduct to impose active incarceration, and in any event, as a first technical violation, it would not provide a basis for the trial court's ruling. *See* Code § 19.2-306.1(A), (C). Additionally, neither party suggests that subsection (A)(v) controls the outcome of this appeal, and we are conscious of the requirement to decide cases on the best and narrowest ground. *See, e.g.*, *Heart*, 75 Va. App. at 474 n.8. Therefore, we do not address whether the appellant's alcohol and drug violations were technical ones under subsection (A)(v) or whether a properly presented claim based on that subsection would have resulted in a different outcome.

## B. Drug Violation

The appellant asserts that his violation of probation based on his positive tests for marijuana use was a technical violation. Therefore, he argues that the trial court was not authorized to impose any active incarceration based on that violation.

We addressed a similar issue in *Delaune*, a case decided well after the trial court's ruling here. In *Delaune*, 76 Va. App. at 381-83, the Court held that a "special condition" that the defendant "remain 'drug free' was [the same as] a failure to 'refrain from the use, possession, or distribution of controlled substances'" as set out in Code § 19.2-306.1(A)(vii). Here, too, we hold that the wording of the appellant's listed marijuana violation and the language in subsection (vii) of Code § 19.2-306.1(A) are substantively the same because they involved the same conduct. The appellant's violation of the special instruction that he not "consume[] or possess . . . marijuana[] and/or illegal substances" is also a violation of the requirement of Code § 19.2-306.1(A)(vii) that he "refrain from the use" or "possession" of "controlled substances." *See Delaune*, 76 Va. App. at 381-83.

Consequently, the drug-related portion of the appellant's violation of Code § 19.2-306.1(A) is a technical violation and does not support the imposition of any of his previously suspended sentence.

## C. Active Time Imposed

The alcohol violation supports the trial court's decision to impose active incarceration because the violation is not a technical one under Code § 19.2-306.1(A)(vi). Nonetheless, the court's erroneous ruling that the marijuana violation was not technical could have impacted its decision regarding how much active time to impose.[11] This is particularly the case in light of the

---

[11] The fact that the outcome here (permitting the trial court to impose active time for one positive alcohol test but not for multiple positive marijuana tests) may seem anomalous is not dispositive. *Cf. Henthorne*, 76 Va. App. at 67-68 & n.1 (rejecting such a claim under subsection

- 11 -

fact that the appellant had only one positive test for alcohol and multiple positive tests for marijuana use. Therefore, we remand the case for the trial court to consider anew how much active time, if any, to impose.

CONCLUSION

The trial court had the authority to impose ninety days of active time under Code § 19.2-306.1 because the appellant's violation of his sex offender special instruction prohibiting him from consuming any alcohol did not match the behavior in (A)(vi) and therefore was not a technical violation. Because the court erred by ruling that the marijuana usage also was not a technical violation, we remand to the trial court to consider how much active time, if any, to impose for the appellant's probation violation.

*Affirmed in part, reversed in part, and remanded.*

---

(A)(iii), involving a probationer's failure to report within three days of release from incarceration, which the Court held required identical treatment without regard for whether the probationer merely reported late or never reported at all).